STATE v. THOMAS WALTER TAYLOR.

(Filed 21 March, 1956.)

**Criminal Law § 50d—**

New trial awarded in this case for impeaching question asked defendant by the court upon the trial.

APPEAL by defendant from *Rudisill, J.,* 9 January Regular Criminal Term, MECKLENBURG Superior Court.

Criminal prosecution upon indictment charging the defendant with murder in the first degree in the killing of T. A. Parker. Upon arraignment the defendant entered a plea of not guilty. The evidence on the part of the State tended to support the charge.

The defendant testified as a witness in his own defense. His testimony tended to show mitigation or excuse. He testified that suspecting his wife of infidelity, he concealed himself in the trunk of her car parked near the cafe where she was employed as a waitress. Upon leaving the cafe about midnight, she drove the car in which the defendant was concealed to a point near a parking lot where she sounded the horn, which was answered by another horn nearby. She entered the parking lot and another car parked near. The wife and someone said "hello" to each other and she said, "Get in." The man got in her car. They talked about beer and whiskey and the defendant recognized the man's voice as the same voice that he had heard over the telephone calling for defendant's wife. The defendant then testified they "set there and hugged awhile and kissed and he was trying to get her to have sexual relations with him, but she wouldn't do it." Upon objection being interposed, the following occurred:

> "The Court: Wait a minute, now. Now, son, it's an evident fact that you couldn't have seen them hugging there, if you were in the trunk of the car, could you?
> "A. Well, I heard their lips smacking.
> "Court: Well, they might have been smacking without hugging. What I want you to do is tell what you know of your own knowledge.
> "A. Don't many people kiss unless they do hug.
> "Court: Well, they may have a different system about it, you know. What I want to do, I'm trying to give you a chance to get your evidence in there, but there is a rule that you have to go by. Now, just tell what you know and then it's up to the jury to say whether or not there was any hugging going on, if you didn't see them if you heard some kissing, then say what you heard."

The defendant objected to the court's questions and comment. The objection is brought forward as Exception No. 6.

The defendant was convicted of murder in the second degree. From the judgment that he be confined in the State's Prison for 30 years, he appealed, assigning errors.

*William B. Rodman, Jr., Attorney General, and T. W. Bruton, Assistant Attorney General, for the State.*

*Marvin Lee Ritch, T. O. Stennett, Ray S. Farris, and James B. Ledford for defendant, appellant.*

PER CURIAM. The questions and comment by the court tended to impeach or discredit the defendant. Counsel may cross-examine. The court cannot. Regardless of how unreasonable or improbable the defendant's story, the court must maintain the "cold neutrality of an impartial judge." Though not intended, the trial court's questions may well have influenced the jury against the defendant. The danger is too great to permit the verdict to stand. The record discloses other assignments of error not without merit.

On the authority of *S. v. Smith*, 240 N.C. 99, 81 S.E. 2d 263, and cases there cited, a new trial is ordered.

New trial.